57 CCPA

**Application of Myer FREED.**
**Patent Appeal No. 8215.**

United States Court of Customs and Patent Appeals.
May 14, 1970.

Herman Hersh, Chicago, Ill., George A. Degnan, McDougall, Hersh, Scott & Ladd, Chicago, Ill., attorneys of record, for appellant.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Leroy B. Randall, Joseph F. Nakamura, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges, and RAO, Chief Judge, United States Customs Court, sitting by designation.

BALDWIN, Judge.

Freed appeals from the decision of the Patent Office Board of Appeals which sustained the examiner's rejection of the claims in his application[1] as unpatentable under 35 U.S.C. 103.

## THE INVENTION

Three of the four claims on appeal define the invention as a method of producing calcium pantothenate "consisting of reacting in a single reaction step and under substantially anhydrous conditions, beta alanine, pantoyl lactone and calcium carbide." Calcium pantothenate, according to appellant

is old and well known to the art. It is usually prepared as an intermediate in the pathway for the preparation of pantothenic acid, although calcium pantothenate in and of itself has widespread use as a vitamin supplement in animal feed or in human foods.

The fourth claim, claim 19, recites the preparation of the chloride double salt of calcium pantothenate by adding calcium chloride, in a subsequent reaction, to the product prepared by the single step reaction of claims 15–17. Appellant concedes that "there is no real invention in the preparation of the double salt", since the reaction of pantothenate with calcium chloride "is a well known procedure." Thus, claim 19 depends for patentability on the patentability of the single step process described in the other claims.

## THE REJECTION

The claims were rejected as obvious in view of the disclosure of an Italian patent[2] which teaches the preparation of calcium pantothenate by *first* reacting calcium carbide with beta alanine under anhydrous conditions to produce calcium beta alanate and, *subsequently*, adding pantoyl lactone to the first reaction product. Claim 19 was rejected over the cited Italian patent in combination with a German patent[3] disclosing the treatment of calcium pantothenate with calcium chloride to produce the double chloride salt. It was the examiner's position, adhered to by the board, that the performance of the reaction in one step, as claimed, was made obvious by the prior performance of the same reaction in two steps in the Italian patent. The German patent was relied on to show that, once the calcium pantothenate had been produced, it would be obvious to produce the calcium chloride double salt. This court's decision in In re Tatincloux, 228 F.2d 238, 43 CCPA 722, 108 USPQ 125 (1956), was cited apparently as authority to support the position that it would be obvious to si-

1. Serial No. 237,339, filed November 13, 1962.

2. Italian patent 420,229, granted April 18, 1947.

3. German Auslegeschrift 1,041,967, published October 30, 1958.

multaneously perform a process which had previously been conducted in a step-wise manner.

## OPINION

On appeal, appellant has attacked the validity of the broad general proposition that a teaching of a two-step process makes performing that process in a single step obvious. He also alleges error in the specific finding that the claimed process is obvious over the process taught in the Italian patent. He asserts that the process there disclosed follows the accepted practices of the prior art in necessarily making use of a two phase reaction which includes the reaction of calcium carbide and beta alanine to produce calcium beta alanate as a first phase reaction and then reacting the calcium beta alanate with pantoyl lactone to produce calcium pantothenate as a second phase reaction, and thus cannot suggest that the specific reaction process taught may be performed simultaneously. Finally, appellant urges that he has shown evidence proving unexpectedly higher yields with his process as compared to that of the Italian patent.

We agree with appellant that reliance on the *Tatincloux* opinion adds nothing to the Patent Office position. In that case, the process involved was for the production of a porous refractory material and included the steps of (1) making an aqueous colloidal suspension of a refractory material, (2) filling the suspension with gas bubbles, and (3) flocculating the suspension about the bubbles to disperse them uniformly throughout the suspension. Steps (2) and (3) were performed simultaneously in the claimed process whereas the prior art had disclosed performing them in separate steps. This court sustained a holding of unpatentability. As can be seen, however, the process steps involved were entirely physical in nature. What was

said there regarding the obviousness "of performing simultaneously operations which have previously been performed in sequence," might have been correct for the facts of that case. We are not prepared, however, to draw from that opinion the broad proposition which the Patent Office has ascribed to it. In this, as in any case, a determination of obviousness must be based on facts and not on unsupported generalities.

Regarding the interpretation of the disclosure in the Italian patent, appellant has convinced us that the teaching therein neither contemplated nor suggested the single stage production of calcium pantothenate. Initially the patent contains the statement:

> "According to the present invention it has been discovered that many of the difficulties encountered in the older technique are remedied by preparing calcium pantothenate by a process which includes reacting a totally anhydrous calcium beta alanate with alpha —hydroxy—beta, beta—dimethyl—gamma—butyrolactone (pantoyl lactone) in a rigorously anhydrous alcoholic medium."

Further highlighting appellant's position is the concluding paragraph of the patent wherein it is stated:

> the process of the present invention is not particularly concerned with the method by which the beta alanate of anhydrous calcium is prepared. Any appropriate method can be used.
> \* \* \*

In addition, each and every example relied upon by the examiner specifically discloses separate production of the calcium beta alanate before the pantoyl lactone is added. It seems incontrovertible that the teaching of the Italian patent disclosure is of an improvement in the two stage reaction of calcium beta alanate with pantoyl lactone.[4]

4. We note that the following statement appears in the later-published German reference:

> It is known to prepare calcium pantothenate by condensation of [pantoyl

lactone] with calcium B-alanate in alcohol \* \* \*;

This is an apparent reference to the teaching of the Italian patent and is worth considering as a more contemporaneous

788

The Patent Office position with regard to the teaching of the Italian patent may be summarized as follows: to one skilled in this art, reading the Italian patent disclosure, it would be obvious to conclude that the reaction process there disclosed could be accomplished by mixing the three recited compounds and allowing them to react simultaneously. Appellant responds:

It would appear that the Italian patent reflects the teachings and recognition of an expert in the field. If it were so obvious to carry out the reaction of calcium carbide, beta alanine and pantoyl lactone in a single stage reaction, it would have been obvious as well to the inventor whose invention is described in the Italian patent and the Italian patent would at least have suggested such possibilities. Yet, the Italian patent is not only completely silent on this point, the Italian patent clearly supports the belief of the prior art that it was necessary first to produce calcium beta alanate before reaction with pantoyl lactone to produce calcium pantothenate.

Since the reference disclosure is clear and specific in teaching the *separate* two-stage reaction, the Patent Office position has to be based at least in part on the assumption that looking at the disclosure as a whole, there would be no reason *not* to conclude that the process could be performed in a single stage.

This is, in effect, a conclusion, which must have some support, either in logic or in cold, hard facts. No evidence has been submitted to support it, and to us it seems more logical and reasonable to infer that one teaching a chemical reaction process would set out the *least* number of reactions thought necessary to accomplish the desired objective. Thus, one skilled in the art who reads the teaching would have to presume that if the reactants were not combined in the manner shown, some adverse side reaction or no reaction at all would occur.

With these considerations in mind we hold that, on the record before us, the Patent Office has failed to present enough evidence to support a prima facie case and the conclusion of obviousness must fall.[5] The decision of the Board of Appeals must, therefore, be reversed.

Reversed.

---

indication of what the art felt was necessary to produce calcium pantothenate. It appears to lend support to appellant's argument that the art thought it necessary to first prepare the calcium beta alanate.

5. The position we have taken makes it unnecessary to consider appellant's assertion of unexpected results. We will, however, note that the solicitor has pointed out enough discrepancies between the technique employed by appellant and that shown in the reference as to warrant our not relying on the comparative figures shown.