58 CCPA

**Application of Charles J. ESTERHOY, Jr. and William D. Hunter, Jr.**

**Patent Appeal No. 8456.**

United States Court of Customs and Patent Appeals.

April 29, 1971.

Gerard P. Rooney, Morristown, N. J., attorney of record, William T. Bullinger, Cushman, Darby & Cushman, Washington, D. C., of counsel, for appellants.

S. Wm. Cochran, Washington, D. C., for Commissioner of Patents. Fred W. Sherling, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and FORD, Judge, United States Customs Court, sitting by designation.

BALDWIN, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, which affirmed the rejection of all claims in appellants' application [1] as unpatentable in view of the prior art under 35 U.S.C. § 103.

### THE INVENTION

The subject matter of the application on appeal relates to the so-called "wet-process" for the production of phosphoric acid. It appears from the record that the acid product of the above-mentioned process (which in essence consists in treating naturally-occurring phosphate rock with a strong mineral acid, such as sulphuric acid) is relatively dilute, containing about 50% by weight of "phosphate," as well as some impurities. For a number of reasons, it is commercially desirable to increase the percentage of "phosphate" in the acid and this is most commonly done by concentrating the acid through dehydration by means of heating. The process of the appealed claims is said to be an improvement over known concentration techniques. It involves the continuous feeding of the wet-process acid into a heated evaporation chamber where it is contacted with a stream of hot gases and caused to evaporate. The flow rates of the feed acid and the hot gases are maintained so as to prevent any build-up in the evaporator of the liquid acid. The gases with the acid entrained therein are then passed to a separator and the superconcentrated acid collected. Claim 11, the narrowest independent claim on appeal, defines the subject matter sought

[1]. Serial No. 346,514, filed February 21, 1964, entitled "Concentration of Wet-Process Phosphoric Acid."

to be patented as follows [paragraphing added]:

11. The process of concentrating wet-process phosphoric acid containing from 50 to 55% by weight of $P_2O_5$ to produce superphosphoric acid

in an evaporator comprising a combustion chamber communicating with a downcomer extending from the top of the evaporator to near the bottom thereof for the supply of heating gases from the combustion chamber to the evaporator, said downcomer being positioned within said evaporator to define with the inner walls of said evaporator an annular vapor space,

which process comprises

continuously feeding to the combustion chamber a heat generating medium consisting of gaseous fuel and air to support combustion thereof to produce products of combustion,

continuously feeding the products of combustion downwardly through said downcomer,

continuously introducing an oppositely directed stream of orthophosphoric acid into said evaporator at a point close to the discharge of the heating gases from the downcomer,

the volume and velocity of said heating gases being such as to entrain substantially all of the orthophosphoric acid introduced into the evaporator with a retention time of the acid in the evaporator not exceeding two seconds and to maintain substantially no acid level in said evaporator,

continuously flowing the resultant stream of heating gas containing entrained phosphoric acid through the annular vapor space and then into a zone where coalescence of the entrained acid particles is effected without cooling said stream more than about 10°F below the temperature of the vapor space to produce superphosphoric acid as product, and

continuously removing the superphosphoric acid and the residual gas from said zone.

Claim 7 further narrows the subject matter defined by specifying that the evaporation zone is maintained at a temperature of from 540° to 550°F., and that the stream of heating gases before entrainment is maintained at a temperature of from 700° to 1400°F. Appellants appear satisfied with the solicitor's characterization as "the most significant feature of the claimed process," the requirement appearing in each of the independent claims on appeal that "substantially no acid level" is maintained in the evaporation zone.

## THE PRIOR ART

Switzer et al.[2] (hereafter "Switzer I") discloses apparatus for concentrating wet-process phosphoric acid by the technique of "submerged combustion heating", which the patent defines as

a process wherein a fuel is burned within a chamber and the resultant hot combustion gases are discharged beneath the surface of a body of liquid being heated, transferring their heat to the cooler liquid by direct contact. After passage through the liquid the gases are usually discharged to the atmosphere as exhaust gases. The flame within the burning chamber, which in most, but not all instances is partially or wholly submerged in the liquid, is usually prevented from impinging upon the liquid by extending the burning chamber walls or by attaching an extended conduit, usually referred to as a dip tube, to the burning chamber.

Switzer et al.[3] (hereinafter "Switzer II") is indicated to be a continuation-in-part of the application which matured into the Switzer I patent and discloses a particular process for concentrating wet-process phosphoric acid employing apparatus essentially similar to that shown in Switzer I. Drawn primarily to

2. U. S. Patent 3,073,683, granted January 15, 1963.

3. U. S. Patent 3,104,947, granted September 24, 1963.

an improvement over the basic process which overcomes the problem of scale deposits from the impurities contained in the acid, thereby minimizing the loss of phosphorus to the exhaust gases in the form of aerosols, the Switzer II patent states that these objectives

> can be achieved by a submerged combustion heating technique wherein hot combustion gases are discharged into a body of the acid and a combined gas and liquid acid stream is passed upwardly through a narrow annular zone surrounding said combustion gas stream. The combined stream is thereafter passed into a zone of enlarged cross-sectional area to disengage the entrained hot concentrated liquid acid from the gas stream containing the cooled combustion gases, water vapor and volatile impurities from the acid.

> In accordance with our invention, the formation of aerosols in the exhaust gases is reduced to a minimum by: reducing the temperature of the combustion gases before they contact the acid; cooling the surfaces of said nozzle which are contacted with acid by passing a heat exchange fluid through the lower interior of the nozzle; and providing a very narrow annulus for the upward flow of the hot gases and acid surrounding the combustion gas stream.

Fleming[4] is directed primarily to a process for removing fluorine-containing impurities from wet-process phosphoric acid. The disclosed technique involves atomizing the acid, contacting it with steam and thereafter mixing this acid-steam combination with hot combustion gases for at least two seconds to entrain the acid solution as particles within the hot gases. Subsequent separation produces a fluorine-free solution which is "concentrated with respect to phosphate materials simultaneously with the elimination of fluorine therefrom."

IN THE PATENT OFFICE

The Board of Appeals treated the rejection as being under 35 U.S.C. § 103 and based on the disclosure of Switzer II taken with Fleming. The examiner's position with regard to the latter reference had been that it demonstrated that the use of about a two second residence time and a temperature in the order of 500°F. for the combustion gas—subdivided acid mixture were "known expedients in a phosphoric acid—combustion gas entrainment system." The board stated that "the relevancy and pertinency of Fleming for the purpose it is relied upon is not in dispute," and limited its discussion to the application of the Switzer II disclosure to the rejected claims.

Both the examiner and the board felt that the "only significant feature" of the claimed invention "not actually shown by Switzer et al. [II] is that substantially no acid level is maintained in the evaporation zone." Appellant has not really contested this and we need not therefore reproduce the other features of the claims or discuss how they were read on the reference disclosure. The controversy before us revolves around the manner in which the Switzer II disclosure may be interpreted with regard to exactly how the dilute acid solution is brought into contact with the hot combustion gases.

The examiner's position on interpretation of the reference was that in view of the fact that Switzer II specifies that the hot gases emanate from the tube at a high enough velocity to prevent acid from passing into the tube "and in view of the physical arrangement of the nozzle, the acid in [evaporation] zone A is depressed below the nozzle without any distinct liquid level in zone A." He went on to assert: "Entrainment as described in Switzer [II] would inherently require that the liquid acid be broken up in this zone inconsistent with liquid level formation."

4. U. S. Patent 2,977,196, granted March 28, 1961.

The board commented that "[p]lausible support exists for the Examiner's contention that no distinct liquid level of acid is present in the evaporator since entrainment is inconsistent with liquid level formation." It went on, however, to rest its affirmance on the interpretation that

> [t]he small pool of acid which conceivably may be present in Switzer et al.'s preferred embodiment is not intentionally maintained as such and exists only as an incidental adjunct which clearly cannot be viewed as essential to the process. This is clearly evident from the alternate embodiment disclosed by the patentees at column 5, lines 23–25, wherein the dilute acid is introduced into zone C and permitted to drain down annular zone B into contact with the hot gases thus indicating that a body of acid is not essential and need not necessarily be present. The extent to which a pool of acid is present, furthermore, obviously depends on the amount and velocity of the hot combustion gases passed through the system, and patentees teach that these variables may be regulated and adjusted to desired values. One skilled in the art would thus manifestly operate the Switzer et al. process under conditions most desirable for maximum and efficient concentration of the acid. The conditions recited in the claims appear to us to be only optimum and easily ascertained by routine experimentation.

Appellants' response to the examiner's position had been to urge that since the Switzer II process was specifically designated as an improvement in the "*submerged combustion*" technique, it was essential to the process of the patent that a pool of acid be present in the evaporation zone and the patent disclosure would not suggest that the process could be performed with no liquid at all in that zone. After noting how the board had interpreted the reference, appellants requested reconsideration submitting two affidavits to support the contentions they had made earlier.

The first affidavit was that of William C. Scott, Jr., an employee of the Tennessee Valley Authority and evidently a disinterested party to this proceeding and an acknowledged expert in the field of concentrating wet-process phosphoric acid. The affiant averred that he had read the pertinent disclosures of the application at bar and the Switzer II patent and stated that in his opinion the language in the reference patent was directed solely to the use of a pool of acid since "the only accepted meaning" of the terminology "submerged combustion" and "dip tube" in the superphosphoric acid art presupposed the existence of such a pool. The affidavit further stated that Mr. Scott had directed the carrying out of experiments in this area without the use of a pool, that in his opinion the technique of producing superphosphoric acid by releasing hot gases above the surface of a pool "would be grossly inefficient from a standpoint of heat transfer" and, finally, that, in his opinion,

> it would not have been obvious from the above-mentioned Switzer et al. patent to one skilled in the art at the time of applicants' invention to operate an orthophosphoric acid concentrator of the general type shown by Switzer et al. for the purpose of producing superphosphoric acid without the use of a pool.

The other affidavit was by one Hunter, the Director of Process Research and Development for appellants' assignee. This affidavit contained statistics showing that production of concentrated phosphoric acid with the process of the appealed claims had increased substantially during a period of 5 years prior to the date of the affidavit. It concluded with the affiant's statement of opinion that the process "represents a substantial cost improvement over submerged combustion operation."

Appellants supported their filing of these affidavits on the grounds that the Board of Appeals had necessitated their submission because of its new and allegedly incorrect interpretation of the ref-

erence teaching (the Scott affidavit) and its refusal to give weight to arguments of commercial success which appellants had put forward (the Hunter affidavit).

It is not clear whether the board accepted the Hunter affidavit. The opinion on reconsideration states only that no argument concerning commercial success was made in appellant's brief and "in any event, commercial success is relevant only where question of patentability is in doubt and such, in our view, is not the case here." With regard to the Scott affidavit, the board commented that it "is no more than a statement of his opinion and does not persuade us of any error in our conclusion for reasons fully discussed in our decision."

## OPINION

As we have determined it, the Patent Office position in this case has two aspects: first, that the subject matter being claimed involves merely the optimization of the process disclosed in the cited references employing apparatus essentially similar to that of Switzer II, and, additionally, that the inference of obviousness drawn from the reference disclosures is so strong that it cannot be rebutted.[5] Appellants appear also to be arguing a dual position. On one hand they are asserting that the reference disclosures do not make out a case of obviousness since the Switzer II reference in particular is directed solely to the submerged combustion technique of concentration and thus would not suggest to one of ordinary skill in the art that the pool of acid required by that technique could be eliminated. On the other hand factors such as the improved commercial results obtained with their process are put forward in rebuttal against any initial conclusion of obviousness. We find that, on the whole, we are persuaded more by appellants' position.

The logic of the Patent Office position regarding the case made out by the teachings of the references requires as one premise the proposition that either Switzer et al. [II] did not know how to optimize their process or that they were holding back on its disclosure. The record contains nothing explicit in support of this proposition and we cannot see how it could be drawn from the reference disclosure. On the contrary, as we have had occasion to point out only recently, the more likely inference would be that the reference contains what the patentees thought was the optimum technique for carrying out their process. See In re Freed, 425 F.2d 785, 57 C.C.P. A. 1089 (1970).

Moreover, we are convinced by the Scott affidavit that the teaching of Switzer II was concerned only with submerged combustion. The showing contained in that affidavit is before us as evidence since it was properly presented to the Board of Appeals and considered by that tribunal in reaching its final decision. We have also given weight to Mr. Scott's opinions, as an expert in the field, that the art would have thought that contacting the acid with the hot gases in any manner but the direct contact involved in the submerged combustion technique would be grossly inefficient from a standpoint of heat transfer and that the claimed technique would not have been obvious from the Switzer II patent.

The combined effect of the facts asserted in the Scott affidavit and the holding that one premise of the Patent Office position is not supported leads us to conclude that the subject matter of the appealed claims has not been shown to be obvious under the statute. Accordingly, the decision of the Board of Appeals is reversed.

Reversed.

5. Witness the following statement from the brief of the solicitor:

Such secondary considerations as commercial success and opinions by experts are not required when obviousness can be determined from the plain teachings of the references.