59 CCPA

**Application of William Judson MATTOX and William Floyd Arey, Jr.**

**Patent Appeal No. 8723.**

United States Court of Customs and Patent Appeals.

June 15, 1972.

Rehearing Denied Oct. 5, 1972.

Arnold H. Krumholz, Pearlman & Schlager, Linden, N. J., attorneys of record, for appellants. Douglas B. Henderson, Finnegan, Henderson & Farabow, Washington, D. C., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Raymond E. Martin, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and MALETZ, Judge, United States Customs Court, sitting by designation.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1–19 in appellants' application serial No. 469,895, filed July 6, 1965, as a continuation-in-part of their application serial No. 168,548, filed January 24, 1962. We affirm.

*The Subject Matter Claimed*

Appellants claim certain hydrocarbon cracking processes employing "dual-exchanged," crystalline, aluminosilicate zeolites as catalysts. The word "dual-exchanged" means that the zeolites, or "molecular sieves," used in these processes have had most of their initial alkali-metal cation content replaced by means of base exchange with *both* (1) hydrogen ions and/or hydrogen ion precursors, such as ammonium ions, *and* (2) cations of metals from groups IB through VIII of the Periodic Table. Claim 1, which we have subdivided for clarity, is illustrative:

1. In the catalytic cracking of a hydrocarbon oil to produce hydrocarbons of lower boiling range, the improvement of

contacting said oil under cracking conditions with a crystalline aluminosilicate

having an ordered crystalline structure having from 0.5 to 1.0 equivalent per gram atom of aluminum of ions of positive valence of which no more than 0.25 equivalent are alkali metal cations and

having associated with said crystalline aluminosilicate both

hydrogen ions and ions capable of conversion to hydrogen ions and

cations of metals selected from Group IB through Group VIII of the Periodic Table,

said metal cations, hydrogen ions and ions capable of conversion to hydrogen ions being associated with the aluminosilicate as a result of base exchange.

Claims 4–6 recite only ammonium ions for the first-recited base exchange, and claims 9–19 recite that the first-recited base exchange is made with hydrogen ions *or* ions capable of conversion to hydrogen ions. The metal cations are more specifically recited in claims 3, 6, 10, and 19 as alkaline earth metal cations, in claims 9, 11, 12, and 17 as "metal cations other than alkali metal cations," in claims 13–16 as magnesium, zinc, strontium, and calcium ions, respectively, and in claim 18 as "selected from the group consisting of alkaline earth metals and zinc." Claim 11 specifies a silica-to-alumina mol ratio "greater than 3," claim 12 a silica-to-alumina mol ratio "greater than 4 to 6," and claims 18 and 19 a silica-to-alumina mol ratio "between 3 and 6." Claim 17 recites that "said zeolite has uniform pore openings between 6 and 15 Angstrom units," and claims 18 and 19 recite that the zeolite has "uniform pore openings between about 6 and 15 Angstrom units."

Claims 1, 2, 4, 5, 7, and 8 were copied verbatim from the Frilette et al. patent No. 3,140,252 for purposes of interference. Claims 3 and 6 were "substantially copied in modified form" from the same patent for the same purpose, according to appellants' declaration under Rule 205(b). Also according to that declaration,

> * * * the remaining claims of the instant application, i. e. claims 9 through 19, are directed to substantially the same invention claimed in U.

S. Patent 3,140,252[1] and are submitted as alternates to the above claims for purposes of interference.

### The Rejections

The prosecution history of this case, in which a multiplicity of rejections have been made, has been unusually confused. However, the solicitor has commendably volunteered to "simplify the issues" by regarding certain of the bases for the rejections made below as "cumulative."

The references are:

Frilette et al. No. 3,140,252, issued July 7, 1964, on application serial No. 343,489, filed Feb. 10, 1964, purporting to be a division of serial No. 161,242, filed Dec. 21, 1961.

Frilette et al. No. 3,140,322, issued July 7, 1964, on application serial No. 754,915, filed Aug. 14, 1958.

We shall refer to these references as the '252 and '322 patents.

The two rejections which the solicitor now asks us to sustain are of claims 1–19 as obvious in view of the '322 patent, under 35 U.S.C. § 103, and of claims 1–19 as anticipated by the '252 patent under 35 U.S.C. § 102. The determinative issue as far as the second ground of rejection is concerned is whether appellants' claims are supported by their parent application, serial No. 168,548, for the solicitor has conceded that, if they are,

> * * * the Rule 204(b) affidavit [which appellants submitted] * * * which alleges completion of the claimed invention prior to December 21, 1961, should be sufficient to remove '252 as a reference under Section 102.[2]

---

1. On appeal, appellants took the flatly contradictory position that "Claims 11–12 and 18–19 are completely unobvious, even over the '252 patent disclosure."

2. Apparently the only present effect of a ruling that appellants' claims are not supported by their parent application would be that appellants would have to file a Rule 204(c) affidavit rather than a Rule 204(b) affidavit in order to provoke an interference with the '252 patent. This is certainly a far different result than flows from our usual decisions with respect to patentability and priority, and it sounds suspiciously like a "question of mere Patent Office practice." See Gholz, Patent and Trademark Jurisdiction of the Court of Customs and Patent Appeals, 40 Geo.Wash.

Both the '322 patent and the '252 patent were assigned to Socony Mobil Oil Company, Inc. Appellants' application appears to be assigned to Esso Research and Engineering Company.

## OPINION

### I. *Obviousness in View of the '322 Patent*

■ The '322 patent sets forth processes for selectively conducting organic chemical reactions by employing a crystalline, aluminosilicate zeolite containing *an* added catalyst. In other words, it is basically concerned with *single-exchanged* zeolites. However, it discloses that "molecular sieve[s] of the 'A' series [i. e., those having pore diameters of approximately 4 and 5 angstroms] are ordinarily prepared initially in the sodium form of the crystal" and that "the sodium ions * * * may be replaced partially or completely by other cations," including, inter alia, calcium, magnesium, strontium, and zinc, prior to addition of the added catalyst. It also discloses that "Molecular sieves of the 'X' series [i. e., those having pore diameters of approximately 10 to 13 angstroms] are prepared in a manner similar to that described hereinabove for preparation of molecular sieves of the 'A' series" and explains the differences in the manufacture of the two. The exact pore size of both series will differ depending upon which ion is used to replace the sodium ion, a fact which can be exploited in the processes disclosed in the '322 patent. In particular, the patent discloses that the calcium-replaced sieves of

both series were commercially available at the time of the filing of the application from which the '322 patent matured, and two of the examples given in the '322 patent employ such a zeolite having a 5 angstrom pore diameter as a starting material. In the first of these, 66.5 grams of the calcium-containing zeolite were "treated with an aqueous solution of 26.6 grams of $NH_4NO_3$ dissolved in 1 gallon of water * * * [in order] to introduce catalytically active acidity to replace calcium." However, the "replacement" was actually only a reduction, from 9.95% calcium in the starting material to 9.08% in the final product. The ammonium ion was then converted to a hydrogen ion and ammonia gas, if we and the solicitor read the disclosure correctly. The dual-exchanged zeolite so obtained was then used in the second example to crack normal hexene. It should also be noted, as the board did, that these examples are interspersed with others in which single-exchanged zeolites are used to crack various hydrocarbon streams, some of which are much more complex.

■ Appellants argue that the '322 patent does not teach the base exchange of any crystalline aluminosilicate zeolite with both hydrogen and metal ions, and indeed it does not do so expressly. The disclosure of the patent concerning the addition of added catalysts is particularly instructive on the question of single-exchange vs. dual-exchange:

> Replacement is suitably accomplished by contacting the molecular sieve with

L.Rev. 416, 424 (1972). However, in In re Manson, 333 F.2d 234, 52 CCPA 739 (1964), rev'd on other grounds sub nom. Brenner v. Manson, 383 U.S. 519, 86 S.Ct. 1033, 16 L.Ed.2d 69 (1966), we assumed jurisdiction to determine the sufficiency of affidavits under old Rule 204(b), 24 F.R. 10346 (1959), and the parties have not questioned our authority to do so under the rule as it is now formulated. The difference we see between the old and new Rule 204 (b) which is possibly relevant to our jurisdiction is that a holding of failure to comply with old Rule 204(b) was, in

effect, a holding that the Commissioner need not declare an interference because the junior party was not even prima facie prior to the senior party's filing date, whereas a holding of failure to comply with new Rule 204(b) only means that the junior party will have to employ a different mechanism to provoke the interference. Whether an interference was provoked by means of a Rule 204(b) affidavit or a Rule 204(c) affidavit would not seem to have· any effect on the substantive issues of either patentability or priority.

a solution of an ionizable compound of *the ion* which is to be zeolitically introduced into the molecular sieve structure for a sufficient time to bring about the extent of desired introduction of *such ion.* [Emphasis ours.]

Furthermore, the '322 patent certainly does not suggest that any special results will flow from the replacement of sodium by two different ions, as appellants' brief assures us is the case. However, these assertions are unsupported by evidence, and, as we have often remarked, "mere lawyers' arguments unsupported by factual evidence are insufficient to establish unexpected results," In re Lindner, 457 F.2d 506, 508, 59 CCPA (1972), and cases there cited.

Appellants' arguments are not without merit, and this has not been an easy case to decide. However, on balance we feel constrained to agree with the solicitor that the '322 patent seems to suggest a dual-exchange cracking procedure on which some of appellants' claims very nearly read. If appellants would rebut this apparent, or "prima facie," obviousness, they must either submit objective evidence of non-obviousness[3] or narrow at least the broadest of their claims.

■ On this appeal, appellants *have* argued separately the patentability of some of their narrower claims. However, as we have several times recently pointed out, "ordinarily we do not consider arguments directed to the significance of a particular limitation at this late stage unless they were raised below." In re Touvay, 435 F.2d 1342, 1344, 58 CCPA 809, 811–812 (1971).

Compare Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037 (1941), and In re Land, 368 F.2d 866, 874–875, 54 CCPA 806, 818–819 (1966). While appellants contend that "the separate patentability of each of the present claims is properly before this court," in fact it seems that only the recitation in claim 7 that the zeolite is "a faujasite" was focused on separately to an extent calling for attention from the board and this court. The board stated only that:

The fact that Frilette et al. 3,140,322 does not expressly disclose faujasite is irrelevant to a rejection under 35 U.S.C. 103 for obviousness over this patent.

Appellants' sole reference to faujasite in their specification is the following, which comes at the end of a general discussion of "large pore zeolites":

For example, the zeolite designated by the Linde Co. as 13X comprises nominally a $SiO_2/Al_2O_3$ mole ratio of about 2.7 (U.S. 2,882,244). On the other hand, the natural sieve mineral faujasite has the same structure and physical properties as the 13X material but has an $SiO_2/Al_2O_3$ mole ratio of about 5/1.

The pertinent disclosure from the '322 patent is as follows:

The 13X crystal is structurally identical with faujasite, a naturally-occurring zeolite. Faujasite, however, is not identical in composition with the 13X zeolite.

The solicitor questions whether claim 7 is limited to natural faujasite per se or whether the term "a faujasite" reads on the 13X product described both in ap-

---

3. During the pendency of this appeal, appellants moved to correct diminution of the record by adding thereto certain papers, including a Rule 132 affidavit, from the file history of application serial No. 343,489, the application from which the '252 patent matured. We denied the motion for failure to comply with the provisions of our Rule 13, which governs such motions. Appellants did not immediately renew their motion, but they have done so in their brief, to which they have appended the material which

they wish to add to their record on appeal. They argue that the affidavit submitted by Frilette et al. "demonstrated the superiority of these dual-exchange zeolites [i. e., those claimed in both Frilette's '252 patent and the present application] as compared to those containing only a single such exchange." That may be so, but the rejection which we affirm is over the disclosure of dual-exchanged zeolites in the '322 patent, and Frilette's Rule 132 affidavit is accordingly irrelevant here.

pellants' specification and in the reference. Either way, appellants lose. If there is any special significance to the use as a starting material for dual-exchanged zeolites of either natural faujasite or the "synthetic faujasite" mentioned in both specifications, appellants have failed to point it out. The rejection of claim 7 is affirmed for the same reason as the rejection of their other claims.

## II. *Support for the Present Claims Appellants' Parent Application*

Because of our disposition of this appeal on the ground of obviousness in view of the '322 patent, we have no need to reach the other ground of rejection, which involves the question of support for the present claims in appellants' parent application. However, should appellants refile their application, their attention is directed to In re Clark, 457 F.2d 1004, 59 CCPA (1972), and In re Smith, Cust. & Pat.App., 458 F.2d 1389, decided May 18, 1972.

The rejection of claims 1–19 is affirmed.

Affirmed.