**Application of Phillip L. MATTISON
and Ronald R. Swanson.**

**Patent Appeal No. 74-568.**

United States Court of Customs
and Patent Appeals.

Jan. 23, 1975.

Jesse B. Grove, Jr., Arlington, Va., attorney of record, for appellants; Gene O. Enockson, Minneapolis, Minn., of counsel.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents; Fred E. McKelvey, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

BALDWIN, Judge.

This appeal is from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, sustaining the examiner's rejection of claims 1 and 3 to 5 of appellants' application.[1] Claims 7–10 have been allowed. We reverse.

### The Invention

Appellants' invention relates to a new class of substituted 2-hydroxybenzophenoxime compounds which are effective extractants for copper values from aqueous solutions at low pH.

It was previously discovered that copper values could be recovered economically from certain aqueous leach liquors by using a liquid ion exchange process employing particular phenolic oximes as the extractants.[2]

While prior phenolic oximes were found to be effective as copper extractants over a wide pH range, their extraction efficiency drops off considerably when the aqueous copper containing solutions have pH's below about 1.5 and especially below 1.0. This represents an important consideration, for certain leach liquors have very low pH's or develop low pH's on being subjected to liquid ion exchange extraction. Appellants have discovered new compounds which have the property of effective copper ex-

1. Serial No. 714,040, filed March 18, 1968.

2. The phenolic oximes used prior to the present invention were those having the following basic structure:

$$\underset{R_m}{\underbrace{\qquad}}\overset{\text{OH}}{\underset{}{\bigcirc}}-\overset{\text{NOH}}{\underset{}{\overset{\|}{C}}}-\bigcirc\underset{R'_n}{\qquad}$$

R and R' are saturated aliphatic, ethylenically unsaturated aliphatic or saturated or ethylenically unsaturated aliphatic ether groups and m and n are 0, 1, 2, 3 or 4. The phenolic oximes contain 3 to 25 carbon atoms in the R and R' groups, the latter being of 1 to 25 carbon atoms when saturated and 3 to 25 carbon atoms when ethylenically unsaturated.

traction from aqueous solutions thereof at low pH.

The appealed claims read:

1. A compound of the formula

$$E_p \overset{OH}{\underset{R_m}{\bigcirc}} \overset{NOH}{\underset{\parallel}{C}} \bigcirc R'_n$$

in which R and R' may be individually alike or different and are saturated aliphatic hydrocarbon groups of 1-25 carbon atoms, E is an electron withdrawing substituent, p is 1, 2, 3 or 4, m is 0 or a whole integer up to 4-p and n is 0, 1, 2, 3 or 4, said compound having a total of 3-25 carbon atoms in $R_m$ and $R'_n$ and said electron withdrawing substituent $E_p$ (1) having an electron withdrawing capacity such that a phenol containing only said substituent has an acid ionization constant Ka of at least about $50 \times 10^{-10}$ and (2) being so selected and positioned on the aromatic ring to substantially increase the efficiency of the compound as a copper extractant from aqueous solutions having a pH of less than about 1.0.

3. A compound according to claim 1 in which R' is a branched chain aliphatic hydrocarbon group.

4. A compound according to claim 1 in which R is a branch chain aliphatic hydrocarbon group.

5. A compound according to claim 1 in which the electron withdrawing substituent is a nitro group.

### The Rejections

Claims 1 and 3-5 stand rejected under 35 U.S.C. § 112, second paragraph, as being indefinite by reason of the language "substantially increase the efficiency of the compound as a copper extractant." As stated by the board:

How much is a substantial increase? Is it 3%, 30%, 300%, or something else? Since the answer to this question must be known in order to determine whether a particular compound is or is not within the scope of the subject matter claimed, we hold that the claims are indefinite and accordingly affirm the rejection based on the second paragraph of 35 USC 112.

Further, the board found that the specification failed to comply with the first paragraph of 35 U.S.C. § 112 for its alleged failure to contain a written description of the invention being claimed. More specifically, the board stated:

We have carefully considered the Examiner's arguments and we affirm the rejection on the sole ground that the specification fails to teach what is meant by a *substantial increase* in efficiency as a copper extractant. In brief, we fail to find in the specification a written description of the invention being claimed.

While the specification does teach one of ordinary skill in the art how to make and use compounds of the type defined by the claims, while it is sufficient to teach one of ordinary skill how to determine whether the Ka value is that required by the claims, and while it is sufficient to teach one of ordinary skill how to test compounds for their ability to extract copper, it does not tell workers in the art how to interpret the data once it has been obtained. For example, in the event two compounds each meeting all the other requirements of the claims provide an increase in copper extraction of 3% and 30%, respectively, one cannot determine from a reading of the specification whether either or both of these compounds is the invention "described".

### Opinion

The board has determined that the limitation "to substantially increase the efficiency of the compound as a copper extractant from aqueous solutions having a pH of less than about 1.0" renders the claims unpatentable under 35 U.S.C. § 112, second paragraph, as not particularly pointing out and distinctly claiming the invention. We disagree.

The board concedes that the claims are directed to what applicants regard as

their invention.[3] The basis for the rejection is that the claims are indefinite by reason of the language "substantially increase the efficiency of the compound as a copper extractant."

The criticized phrase found in claim 1 does not stand in a vacuum. See In re Moore, 439 F.2d 1232, 58 CCPA 1042 (1971). Claim 1 further requires that the substituent Ep has an electron withdrawing capacity such that a phenol containing only the substituent Ep has an acid ionization constant Ka of at least $50 \times 10^{-10}$. The claims must be read in light of the specification. In re Cohn, 438 F.2d 989, 58 CCPA 996 (1971); In re Moore, supra. The specification teaches how the electron-withdrawing substituents must be selected and positioned on the ring in order to provide the desired increase in extraction efficiency at the low pH ranges. In addition to the requirement that the substituent Ep must provide substituted phenols with acid ionization constants of about $50 \times 10^{-10}$ or higher,[4] it is stated that the electron withdrawing group should not adversely affect the solubility or stability of the benzophenoxime, sterically hinder the OH group,[5] or cause interfering side reactions. Further, appellants disclose that the electron withdrawing substituents should not interfere in the extraction process by complexing or reacting with the acid of the low pH copper-containing solution.[6]

We are not persuaded by the board's reasoning that one skilled in the art would not be able to determine the scope of the claimed invention in terms of a specified percentage value. General guidelines are disclosed for a proper choice of the substituent Ep together with a representative number of examples. If the prior art 2-hydroxybenzophenoxime is modified by the inclusion of an electron withdrawing substituent Ep as claimed, resulting in substantially increased efficiency of the compound as a copper extractant from aqueous solutions having a pH of less than 1.0, the compound is within the scope of the claims.[7] Hypothesizing whether an increase in efficiency of 3%, 30%, or 300% is necessary for said increase to be classified as substantial is not determinative of the issue of whether the claims satisfy 35 U.S.C. § 112, second paragraph.

Similarly, we hold that the specification satisfies the requirements of the first paragraph of 35 U.S.C. § 112. The rejection under the first paragraph of § 112 is not for insufficiency of disclosure to enable practice of the invention, but for lack of a written description of the invention. With respect to this rejection, it is sufficient to note that language virtually identical to that objected to for indefiniteness under the second paragraph of § 112 appears in the written description and is as broad as that used in appellants' broadest claims. In re Robins, 429 F.2d 452, 456, 57 CCPA 1321, 1325 (1970).

Therefore, the board's decision is reversed.

Reversed.

---

3. The board stated:

> We find no indication in the record that appellants are not claiming what they regard as their invention; nor has such an issue been raised.

4. Appellants disclose that if a chloro group is selected, it must be positioned in at least one position other than para to the hydroxyl group. Otherwise, it does not provide the necessary Ka value.

5. Appellants disclose that bulky substituents, e. g., -SF5, should not be in the ortho position since they will sterically hinder the OH group.

6. Appellants disclose that substituents such as NH2 should be avoided, as such groups complex or react with acids.

7. It is interesting to note that the board found it unnecessary to consider the scope of the word "substantially" in its holding that the claims are patentable over art cited by the examiner. The board thus stated:

> Such reliance is not inconsistent with our holdings on the section 112 rejections since a given expression, though not precisely worded, may nevertheless convey a general concept neither taught nor suggested by prior art disclosures. Thus, as here, a "substantial" increase clearly is distinct from no increase at all; yet the amount of increase necessary to qualify as "substantial" is unknown. Appellants' Examples are of little assistance since a wide variance in this regard is there shown.