In re Laszlo MAROSI, Joachim Stabenow, and Matthias Schwarzmann.

Appeal No. 83–544.

United States Court of Appeals, Federal Circuit.

June 22, 1983.

Herbert B. Keil, Washington, D.C., argued for appellants. With him on the brief was William M. Blackstone, Washington, D.C.

Fred E. McKelvey, Washington, D.C., argued for appellee. With him on the brief was Joseph F. Nakamura, Sol., Harris A. Pitlick, Washington, D.C., of counsel.

Before MILLER, Circuit Judge, SKELTON, Senior Circuit Judge, and SMITH, Circuit Judge.

JACK R. MILLER, Circuit Judge.

This appeal is from the decision of the United States Patent and Trademark Office ("PTO") Board of Appeals ("board") affirming the examiner's rejection of appellants' claims[1] 2–4, 11, 13, 15, 16, and 18–20, for anticipation, 35 U.S.C. § 102, or obviousness, 35 U.S.C. § 103, and indefiniteness, 35 U.S.C. § 112, second paragraph. We affirm in part and reverse in part.

1. In application serial No. 45,175, filed June 4, 1979, for: "Manufacture of Nitrogen-Containing Crystalline Metal Silicates Having a Zeolite Structure."

2. See, e.g., In re Best, 562 F.2d 1252, 195 USPQ 430 (CCPA 1977); Ciric v. Flanigen, 511 F.2d

## THE INVENTION

Appellants claim a process for making zeolitic compounds. The various natural and synthetic zeolites are characterized by a microporous structure (with pores of approximately molecular dimensions) and are useful as ion exchange materials, molecular sieves, and catalysts. Zeolitic compounds are, perhaps, most valuable for their catalytic properties and are widely used in industrial processes such as the catalytic "cracking" of heavy (long-molecule) crude oil to produce lighter (shorter-molecule) fractions, such as gasoline. The number of prior cases involving zeolites is evidence of their commercial importance.[2]

Typical prior art processes for synthesizing zeolitic compounds require the presence of alkali metal (added by use of sodium oxide—$Na_2O$), which must be removed from the resulting zeolite to make it suitable for use as a catalyst for certain processes (including cracking crude oil). See In re Best, 562 F.2d 1252, 195 USPQ 430 (CCPA 1977), involving a process for stabilizing zeolites from which sodium cations had been removed by ion exchange.

Appellants' process does not require use of alkali metal in synthesizing zeolitic compounds, thereby eliminating the need for an ion-exchange step to remove the alkali metal from the resulting zeolite. Independent claim 18, from which the other appealed claims depend, is illustrative:

A process for the manufacture of a nitrogen-containing crystalline metal silicate having a zeolite structure which comprises:

adding a metal oxide, metal hydroxide, metal sulfate, metal nitrate or hydrated metal oxide and a silicon dioxide source that is essentially free of alkali metal to a 5 to 90% strength aqueous solution of

1182, 185 USPQ 103 (CCPA 1975); In re Kuehl, 475 F.2d 658, 177 USPQ 250 (CCPA 1973); In re Yan, 463 F.2d 1348, 175 USPQ 96 (CCPA 1972); and In re Mattox, 461 F.2d 826, 174 USPQ 155 (CCPA 1972).

hexamethylenediamine to form a mixture that is essentially free of alkali metal;

stirring the mixture to form a homogeneous gel; and thereafter heating the gel to form the crystalline metal silicate; wherein said metal is selected from the group consisting of aluminum, boron, arsenic, antimony, vanadium, iron and chromium, and

whereby said crystalline metal silicate is essentially free of alkali metal.

Product claims 4, 15, and 16 are directed to a zeolite manufactured by the claimed process.

## PRIOR ART

The sole reference relied upon by the examiner and the board is United States Patent No. 4,139,600 to Rollmann et al., entitled "Synthesis of Zeolite ZSM–5." Rollmann et al. teach a process for making a synthetic zeolite that, in its "as synthesized" form, has "extremely low sodium content and the same crystal structure as conventionally synthesized ZSM–5." The Rollmann et al. process requires, as an essential ingredient, an alkali metal. The reference states:

In the present method of preparing a ZSM–5 crystalline aluminosilicate zeolite, a reaction mixture is prepared comprising sources of alkali metal, alumina, silica, organic nitrogen-containing cations, and water.

The mole ratio in the reaction mixture of alkali metal to silica, $SiO_2$ (the most plentiful component, besides water, by at least an order of magnitude), is: Broad—0.01–3.0; Preferred—0.1–2.0; Particularly Preferred —0.2–1.0. (Appellants' calculations that a mole ratio of 0.01 corresponds to 3,819 parts per million ("ppm") alkali metal are not contested.) Although the reference states that the zeolite, as synthesized, can be used "for a number of hydrocarbon conversion reactions" (which are not further specified), it then sets forth a detailed procedure for removing the "alkali metal, e.g. sodium, ions" from the zeolite through the use of conventional ion exchange techniques. The catalytic activity of the resulting ion-ex-

changed, alkali metal-free zeolite is described, thus:

The hereby prepared zeolite ZSM–5 may be used in a wide variety of organic compound, e.g. hydrocarbon compounds and oxygenates such as methanol, conversion processes. Such processes include, for example, alkylation of aromatics with olefins, aromatization of normally gaseous olefins and paraffins, aromatization of normally liquid low molecular weight paraffins and olefins, isomerization of aromatics, paraffins and olefins, disproportionation of aromatics, transalkylation of aromatics, oligomerization of olefins and cracking and hydrocracking.

All of the examples in the Rollmann et al. specification use, as the source of silica, sodium silicate having 27.8% silica and 8.42% (or 84,200 ppm) sodium oxide, $Na_2O$.

Appellants rely solely on the absence of sodium in their starting materials to distinguish over Rollmann et al.

## BOARD OPINION

The board held that the claim limitation, "essentially free of alkali metal," does not satisfy the requirement of 35 U.S.C. § 112, second paragraph:

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

The board explained:

We are well aware that the terminology employed in a claim does not stand alone but must be viewed in the light of the disclosure. However, even when the claims are read in this manner, we fail to find any disclosure in the specification that would tend to indicate just how much alkali metal could be present and still remain within the limitations set forth. Under ordinary circumstances, the disputed phrase would not form a significant part of the claimed subject matter; however, in the present case, it is the determining factor that appellants rely upon to distinguish over the applied prior art. Appellants argue that the composi-

tions relative to freedom from alkali metal serve to distinguish over the prior art disclosure, but nowhere are we able to locate a teaching or disclosure that defines an upper limit that would create a patentable distinction over the prior art. As we find no adequate guidelines to the scope of the disputed phrase and in view of its importance in determining the scope of the claimed subject matter, we will affirm the rejection.

Because it did not consider that the limitation "essentially free of alkali metal" distinguished over what Rollmann et al. described as "extremely low sodium content," the board affirmed the rejection on that reference under 35 U.S.C. §§ 102 or 103. Regarding the process claims, the board said: "[T]he primary object of the reference teaching is to produce a zeolite having a low sodium content and, to this end, it is reasonable that those of ordinary skill in the related art would employ raw materials having minimum amounts of the alkali metal." The board also said, regarding product claims 4, 15, and 16: "While the very low amounts [of alkali metal] may only be obtained [by Rollmann et al.] through the use of ion exchange methods, we have no evidence nor has it been asserted that the product of the prior art would not be essentially the same as that produced by appellants."

## ANALYSIS

Initially, we note that appellants' invention, simply put, is the discovery that zeolites may be synthesized without the presence in the reaction mixture of alkali metal. The PTO does not appear to dispute appellants' point that the prior art syntheses of zeolitic compounds required, as an essential ingredient, alkali metal compounds. At the same time, the parties agree that there are minute but, nevertheless, measurable quantities of alkali metal (however undesired) in the reagents utilized in appellants' synthesis. Thus, this appeal raises the practical question of whether and in what manner appellants may, in their claims, particularly

point out and distinctly claim *their* invention.

■ Appellants have chosen to distinguish their invention from the prior art with the limitation "essentially free of alkali metal." It is well established that "claims are not to be read in a vacuum, and limitations therein are to be interpreted in light of the specification in giving them their 'broadest *reasonable* interpretation.'" *In re Okuzawa,* 537 F.2d 545, 548, 190 USPQ 464, 466 (CCPA 1976). The specification sets forth a method for synthesizing zeolites "in the absence of alkali metal." However, it recognizes that "industrial chemicals always contain traces of sodium," and, in recognition thereof, specifically defines the claim terminology in question, thus:

Free from alkali metal, for the purposes of the invention, means essentially free from sodium ions. The residual alkali metal content of such zeolites is in principle only attributable to impurities of the chemicals used as starting materials.... Thus, commercial pyrogenic silica (Aerosil), which is a particularly suitable starting material, contains about 4 ppm of $Na_2O$.

The difficulty the PTO has with this definition which, appellants say, includes a process using pyrogenic silica having 4 ppm sodium but excludes a process using 3,819 ppm sodium (the lower limit disclosed by Rollmann et al.), is summarized in the Commissioner's brief: "[W]e challenge appellants to show on this record where one skilled in the art would draw the 'essentially free of alkali metal' line between 4 ppm and 3,819 ppm."

Insofar as it requires appellants to specify a particular *number* as the cutoff between their invention and the prior art, the PTO's position is impractical. Appellants' invention does not reside in such a number. The PTO's challenge is reminiscent of the argument advanced by the board in *In re Mattison,* 509 F.2d 563, 184 USPQ 484 (CCPA 1975). In that case, the board held that a compound claim requiring an electron withdrawing substituent selected and

positioned on the aromatic ring "to substantially increase the efficiency of the compound as a copper extractant" failed to satisfy the second paragraph of 35 U.S.C. § 112. The board said: "How much is a substantial increase? Is it 3%, 30%, 300%, or something else?" *Id.* at 564, 184 USPQ at 485. Reading the claims in light of the specification, the Court of Customs and Patent Appeals reversed, saying:

> General guidelines are disclosed [in the specification] for a proper choice of the substituent Ep together with a representative number of examples. If the prior art [compound] is modified by the inclusion of ... substituent Ep as claimed, resulting in substantially increased efficiency ..., the compound is within the scope of the claims. Hypothesizing whether an increase in efficiency of 3%, 30%, or 300% is necessary for said increase to be classified as substantial is not determinative of the issue of whether the claims satisfy 35 U.S.C. § 112, second paragraph.

*Id.* at 565, 184 USPQ at 486. (Footnote omitted.)

As in *Mattison,* appellants have provided a general guideline and examples sufficient to enable a person of ordinary skill in the art to determine whether a process uses a silicon dioxide source "essentially free of alkali metal" to make a reaction mixture "essentially free of alkali metal" to produce a zeolitic compound "essentially free of alkali metal." We are persuaded that such a person would draw the line between unavoidable impurities in starting materials and essential ingredients.

█ Having resolved the indefiniteness problem, it is a simple matter to dispose of the remaining rejections of the process claims. The Rollmann et al. process, which requires alkali metal as an essential ingredient, neither anticipates nor renders obvious appellants' process, which requires the practical elimination of alkali metal. A person of ordinary skill in the art would reasonably expect that, if what is taught as an essential ingredient is not included, an undesirable reaction or no reaction at all would

occur. *In re Freed,* 425 F.2d 785, 788, 165 USPQ 570, 572 (CCPA 1970).

█ The product claims are not susceptible of the same analysis. Rollmann et al. disclose a process for making a zeolite which, after ion exchange to remove alkali metal, may have an alkali metal content of zero. Where a product-by-process claim is rejected over a prior art product that appears to be identical, although produced by a different process, the burden is upon the applicants to come forward with evidence establishing an unobvious difference between the claimed product and the prior art product. *In re Best,* 562 F.2d at 1255, 195 USPQ at 433–34; *In re Brown,* 459 F.2d 531, 535, 173 USPQ 685, 688 (CCPA 1972). Appellants have adduced no such evidence commensurate in scope with their claims.

In view of the foregoing, the rejection based on the second paragraph of 35 U.S.C. § 112 is reversed; the rejection of process claims 2, 3, 11, 13, and 18–20 based on 35 U.S.C. §§ 102 or 103 is reversed; and the rejection of product claims 4, 15, and 16 based on 35 U.S.C. §§ 102 or 103 is affirmed.

AFFIRMED–IN–PART; REVERSED–IN–PART.