**BANCORP SERVICES, L.L.C.,**
**Plaintiff–Appellant,**

v.

**HARTFORD LIFE INSURANCE COMPANY and International Corporate Marketing Group, L.L.C. (formerly known as International Corporate Marketing Group, Inc.), Defendants–Appellees.**

No. 03–1181.

United States Court of Appeals, Federal Circuit.

March 1, 2004.

See also 81 Fed.Appx. 328.

Charles K. Verhoeven, Quinn Emanuel Urquhart Oliver & Hedges, LLP, of Redwood Shores, CA, argued for plaintiff-appellant. With him on the brief was David A. Perlson, Quinn Emanuel, etc., of San Francisco, CA.

Seth P. Waxman, Wilmer, Cutler & Pickering, of Washington, DC, argued for defendants-appellees. With him on the brief were Jonathan E. Nuechterlein and Todd C. Zubler. Of counsel on the brief were R. Laurence Macon, Kirt S. O'Neill, and Melanie G. Cowart, Akin, Gump, Strauss, Hauer & Feld, L.L.P., of San Antonio, TX. Also of counsel on the brief was Rex S. Heinke, Akin, Gump, etc., of Los Angeles, CA.

Joseph P. Zammit, Fulbright & Jaworski L.L.P., of New York, NY, for amicus curiae Metropolitan Life Insurance Company.

Matthew B. Lowrie, Lowrie, Lando & Anastasi, LLP, of Cambridge, MA, for amicus curiae Sun Life Assurance Company of Canada (U.S.). Of counsel on the brief was Ilan N. Barzilay, Wolf, Greenfield & Sacks, P.C., of Boston, MA.

Before RADER, BRYSON, and PROST, Circuit Judges.

BRYSON, Circuit Judge.

This is an appeal from a district court decision holding a patent invalid for indefiniteness. Because we conclude that the patent is not indefinite, we reverse the district court's judgment and remand for further proceedings.

## I

Plaintiff-appellant Bancorp Services, L.L.C., is the owner of United States Patent No. 5,926,792, "System for Managing a Stable Value Protected Investment Plan" ("the '792 patent"). The '792 patent describes a system for administering and tracking the value of life insurance policies in separate accounts. The kinds of life insurance policies that are subject to the system claimed by the patent include separate account policies issued pursuant to Corporate Owned Life Insurance ("COLI") and Bank Owned Life Insurance ("BOLI") plans. Under separate account BOLI and COLI plans, the policy owner pays a higher premium than is needed to fund the death benefit. The extra money can then be invested in a variety of financial assets. Under federal tax law, the death benefit is not taxed and the gains from the investment assets are tax-deferred even if the policy is ultimately surrendered. Banks and corporations have purchased such policies on the lives of their employees to help fund, on a tax-advantaged basis, future post-retirement benefits for the group of insured employees.

Separate account policies have existed since the 1970s, but their use has been limited because of what is known as the "mark-to-market" problem. Accounting rules ordinarily require BOLI and COLI plan owners to report, from quarter to quarter, the cash surrender value of any policies they own, i.e., the amount the owners would receive if they surrendered the policies. That value varies as the market fluctuates, however. Banks and corporations would prefer to report a more predictable, stable value on their financial statements, which is what a stable value protected investment allows.

Stable value protected investment systems provide a mechanism for stabilizing the reported value of life insurance polices by arranging for a third party guarantor, called the "stable value protected writer," to guarantee a particular value for the life insurance policy, regardless of its market value, should the policy have to be paid out prematurely. In order to offset the risk to a potential guarantor for providing that service, the guarantor is paid a fee and restrictions are placed on the policyholder's right to cash in the policy. The '792 patent provides a system for administering variable life insurance policies, including those containing stable value protected investments. The patent provides a computerized means for tracking the book value and market value of the policies and calculating the credits representing the amount the stable value protected writer must guarantee and pay should the policy be paid out prematurely.

Bancorp obtained a patent on its invention with a priority date of September 1996. In January 2000, Bancorp filed suit against defendant-appellee Hartford Life Insurance Company ("Hartford") in the United States District Court for the Eastern District of Missouri alleging that Hartford had infringed the '792 patent. International Corporate Management Group, Inc. ("ICMG"), a Hartford affiliate, was later added as a defendant. Several other claims and counterclaims were added to the lawsuit, but the only issue remaining in dispute on this appeal is Bancorp's claim against Hartford and ICMG for patent infringement.

In February 2002, the District Court granted summary judgment for Hartford and ICMG on Bancorp's patent infringe-

ment claim. *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, No. 4:00–CV–70 (E.D.Mo. Feb. 13, 2002). The court held all the independent claims of the '792 patent invalid for indefiniteness because each of those claims used the term "surrender value protected investment credits," which the court held was fatally indefinite. The court noted that the term "surrender value protected investment credits" was not defined in the patent, and after considering both the text of the patent and the extrinsic evidence proffered by the parties, the court found the term to be so unclear in meaning as to render the patent claims invalid.

The court rejected Bancorp's argument that the term "surrender value protection" meant the same thing as "stable value protection," a term that is used and defined in the specification. Because the court interpreted the term "surrender value" to mean the value of the entire policy, i.e., "the value of all of the investments that make up the entire policy minus a surrender charge and/or any outstanding debt," the court concluded that "surrender value protected investment credits" appeared to refer to "credits to the overall policy surrender value" rather than to credits applicable to the stable value protected components of the policy.

The court found support for that view in the claim language that referred to the "surrender value protected investment credits" for "the life insurance policy," while, as the court explained, stable value protected investments "are only one component, or investment division, of the values that contribute to the overall policy value." The words "surrender value," the court concluded, "necessarily implicate the value of the entire policy."

In addition, the court noted that the independent claims of the '792 patent used the terms "stable value protected investment" and "surrender value protected investment credits" in close proximity. The court regarded the use of the two different terms in the same claims as supportive of Hartford's contention that they were not meant to be synonymous.

Summarizing its review of the intrinsic evidence—in this case the claims and written description of the patent—the district court concluded that it "tends to support the conclusion that the two phrases, 'surrender value protected' and 'stable value protected' cannot be synonyms for one another." Before adopting that conclusion, however, the court looked to the extrinsic evidence, i.e., the evidence offered by the parties as to how the claim language would be understood by persons of skill in the art.

After reviewing the extrinsic evidence offered by each side, the district court credited the testimony of Hartford's expert that the term "surrender value protected investment credits" did not have a well-understood meaning to persons of skill in the art. The court rejected the testimony of Bancorp's principal expert on the ground that he was an expert in stable value funds but was not shown to be an expert in life insurance administration. For that reason, the court stated that it "cannot accept his opinion as evidence of what persons skilled in the art would or would not understand in regard to the phrase 'surrender value protected investment credits.'" In addition, the court rejected the testimony of one of the inventors of the '792 patent on the ground that the proffered inventor testimony concerned what the patentee subjectively intended the claims to mean instead of what those skilled in the art would understand the claims to mean. Finally, the court rejected Bancorp's evidence that before the priority date of the '792 patent Hartford and its associated companies had used the term "surrender value protected in-

vestment" in their internal communications. The court declined to consider that evidence on the ground that it revealed only Hartford's internal use of the term and thus did not constitute a public use of the term that would suggest a widely understood meaning for the term in the industry. After reviewing the extrinsic evidence, the court concluded that Bancorp had not proffered evidence from any expert skilled in the art of life insurance administration who could state that he understood the meaning of the term "surrender value protected investment credits," while Hartford had presented at least one expert skilled in the art of life insurance administration who stated that the phrase "surrender value protected investment credits" would be indefinite to a person skilled in that field of art. Based on that testimony and the court's reading of the patent, the court concluded that the term "surrender value protected investment credits" is indefinite and that the asserted claims of the '792 patent, all of which contain that term, are therefore invalid.

## II

### A

■ Section 112, paragraph 2, of the Patent Act, 35 U.S.C. § 112, ¶ 2, requires that the claims of a patent "particularly point[ ] out and distinctly claim[ ] the subject matter which the applicant regards as his invention." A determination that a patent claim is invalid for failure to meet the definiteness requirement of 35 U.S.C. § 112, ¶ 2 is a conclusion "that is drawn from the court's performance of its duty as the construer of patent claims [and] therefore, like claim construction, is a question of law" as to which we exercise plenary review. *Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1378 (Fed.Cir. 1999); *accord S3 Inc. v. nVIDIA Corp.*, 259 F.3d 1364, 1367 (Fed.Cir.2001). In ruling on a claim of patent indefiniteness, a

court must determine whether those skilled in the art would understand what is claimed when the claim is read in light of the specification. *Personalized Media Communications, Inc. v. Int'l Trade Comm'n*, 161 F.3d 696, 705 (Fed.Cir.1998); *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1576 (Fed.Cir. 1986).

■ We have held that a claim is not indefinite merely because it poses a difficult issue of claim construction; if the claim is subject to construction, i.e., it is not insolubly ambiguous, it is not invalid for indefiniteness. *Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1338–39 (Fed.Cir.2003). That is, if the meaning of the claim is discernible, "even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds." *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed.Cir.2001). By finding claims indefinite only if reasonable efforts at claim construction prove futile, we accord respect to the statutory presumption of patent validity, *see* 35 U.S.C. § 282, and "we protect the inventive contribution of patentees, even when the drafting of their patents has been less than ideal." *Exxon*, 265 F.3d at 1375. Thus, "close questions of indefiniteness in litigation involving issued patents are properly resolved in favor of the patentee." *Id.* at 1380.

### B

■ The question on which the indefiniteness issue in this case turns is easily stated. All of the independent claims in the '792 patent refer to "surrender value protected investment credits for the life insurance policy." Hartford argues that the term "surrender value protected in-

vestment credits" is indefinite because the patent does not expressly define the term; because the meaning of the term cannot be inferred from anything in the patent; and because the term does not have a commonly understood meaning to persons of skill in the pertinent fields of art. Bancorp responds that the patent makes clear that the term "surrender value protected investment credits" means the same thing as "stable value protected investment credits," a term that is used throughout the patent, and that persons of skill in the pertinent art would so understand it. Both Bancorp and Hartford agree that the acronym "SVP," which is used throughout the patent, refers to "stable value protected investments." Bancorp argues that the acronym "SVP" also should be understood to refer to "surrender value protected investments," and that the terms "SVP," "stable value protected investments," and "surrender value protected investments" should all be understood to refer to the same concept.

We agree with Bancorp that the meaning of the term "surrender value protected investment credits" is reasonably discernible and that the asserted claims of the '792 patent are therefore not invalid for indefiniteness. It is true that the entire term "surrender value protected investment credits" is not defined in the patent, and Bancorp has not pointed us to any industry publication that defines the term. Nonetheless, the components of the term have well-recognized meanings, which allow the reader to infer the meaning of the entire phrase with reasonable confidence.

First, the term "surrender value" has a clear meaning to one of ordinary skill in the relevant art. Namely, as the district court noted, "surrender value" is generally interpreted to mean the value of all of the components of a life insurance policy minus any surrender charges and/or outstanding debt. See *Bancorp Servs., L.L.C.*

*v. Hartford Life Ins. Co.*, No. 4:00–CV–70, slip op. at 15 (E.D.Mo. Feb. 13, 2002) (citing *Barron's Dictionary of Insurance Terms* 76–77 (4th ed.2000)). Second, the specification of the '792 patent and the extrinsic evidence make it clear that the term "protected investment" refers to the underlying investment components of an insurance policy or policies whose return is stabilized over time in return for a fee. *See* '792 patent, col. 2, l. 59 to col. 3, l. 4. Finally, the specification makes clear the meaning of the word "credits." The specification explains that the invention "calculates credits due to the targeted return and a present daily investment value." *Id.* at col. 13, ll. 23–24. A "credit," therefore, is the difference between the actual value of an investment and the smoothed out or targeted return value of that investment. Viewing these components of the claim term together, it is reasonably clear that "surrender value protected investment credits" means the difference between the actual value of a protected investment and the targeted return value of that investment at the time the protected life insurance policy is surrendered. From this analysis, we conclude that the term "surrender value protected investment" is not indefinite, but instead has essentially the same meaning as the term "stable value protected investment," which the parties agree has a well-understood meaning as used in the '792 patent and in the field of stable-value investments.

In support of its argument that the patent makes clear the meaning of the term "surrender value protected investment credits," Bancorp points to dependent claims 4, 12, 23, and 32, and the portion of the specification that corresponds to those claims. Each of those claims recites "notifying a surrender value protected investment writer of the investment value and the value of the underlying securities for the current day." The portion of the spec-

ification that corresponds to that claim language states: "In step 1218, the system notifies the SVP writer of the current day's investment value and the value of the underlying securities." '792 patent, col. 13, ll. 28–10. The correspondence between the claim language and the quoted language from the specification is so close, Bancorp argues, that the inference is inescapable that the term "SVP" is intended to be equivalent to the term "surrender value protected investment." Because it is undisputed that "SVP," as used in the '792 patent, refers at least to "stable value protected" investments, Bancorp argues that the correspondence between the claim language ("surrender value protected investment writer") and the language of the specification ("SVP writer") indicates that the terms "surrender value protected investment," "stable value protected investment," and "SVP" all mean the same thing as those terms are used in the patent.

We agree with Bancorp that the correspondence between the reference to "surrender value protected investment writer" in the specified claims and the reference to "SVP writer" in the portion of the specification relating to those claims provides substantial support for Bancorp's contention that, as used in the patent, the terms "stable value protected investment," "surrender value protected investment," and "SVP" are equivalent. Indeed, Hartford offers no satisfactory alternative explanation for the apparent correspondence between the term "surrender value protected investment" and the acronym "SVP" in claims 4, 12, 23, and 32, and the portion of the specification dealing with the subject matter of those claims.

Instead, Hartford seeks to counter that inference from the text of the patent by pointing out that the term "surrender value protected investment credits" is not defined, or even used, anywhere in the specification, and that each of the independent claims uses both the term "stable value protected investment" and the term "surrender value protected investment." The failure to define the term is, of course, not fatal, for if the meaning of the term is fairly inferable from the patent, an express definition is not necessary (although of course the inclusion of a definition would have avoided the need for this time-consuming and difficult inquiry into indefiniteness). *See All Dental Prodx, LLC v. Advantage Dental Prods., Inc.,* 309 F.3d 774, 780 (Fed.Cir.2002). The question therefore is whether, even in the absence of any express definitions, it is reasonably clear that the term "surrender value protected investment credit" means the same thing as "stable value protected investment credit."

■ With respect to that question, Hartford is correct that the use of both terms in close proximity in the same claim gives rise to an inference that a different meaning should be assigned to each. *See Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp.,* 93 F.3d 1572, 1579 (Fed.Cir. 1996) (stating that if two terms described a single element, "one would expect the claim to consistently refer to this element [with one or the other of the two terms], but not both, especially within the same clause"). That inference, however, is not conclusive; it is not unknown for different words to be used to express similar concepts, even though it may be poor drafting practice.

In this case, moreover, the patent uses the two terms in slightly different ways, which may account for the choice of different language. Each of the independent claims refers to a "stable value protected investment" and then refers to "surrender value protected investment credits." Under Bancorp's interpretation of the claims, "stable value protected investment" refers to investments in which a guarantor, or

SVP writer, would ensure a smooth rate of return by promising to make up any difference between the market value of the investments and the agreed-upon smoothed rate of return. The term "surrender value protected investment credits," on the other hand, refers to the credits necessary to make up any shortfall between the actual value of a particular investment at a particular time and the amount the SVP writer had promised to pay on that investment if the policy were surrendered at any particular time. Because of the difference in context, it may be that when referring to the investment the claim drafter intended to emphasize the stability feature (and thus used the term "stable value protected investment"), but when referring to the credits the claim drafter intended to emphasize the need to make up the difference between the actual and the "protected" value of the investment as of the time of the policy's surrender (and thus used the term "surrender value protected investment credits"). We therefore do not agree with the district court that the use of the two different terms in the asserted claims tends to support the conclusion that the two terms cannot be synonyms for one another.

Addressing the use of the term "surrender value" in light of the meaning of that term in the insurance industry, Hartford argues that "surrender value" normally refers to the value of an entire policy, while a "stable value protected investment" refers only to the account within the policy that is subject to a stable value protected guarantee. Thus, Hartford contends that the two terms necessarily convey different meanings. Again, however, the difference in the way the two terms are used in the patent undercuts Hartford's argument. The reference to "surrender value protected investment credits" is plainly not a reference to the surrender value of the entire policy, but only to the credits allocable to the portion of the investment whose

surrender value is protected—something that can easily refer to investments making up less than the entire surrender value of the policy. We therefore do not agree with Hartford that the text of the patent is at odds with Bancorp's argument that the terms "stable value protected investment" and "surrender value protected investment" are synonymous. To the contrary, the evidence summarized above affords substantial support to Bancorp's interpretation of the claim language; and under that interpretation, the asserted claims are not invalid for indefiniteness.

## C

After finding that the language of the patent did not provide a meaning for the term "surrender value protected investment credits," the district court looked to the evidence offered by the parties as to the opinions of those skilled in the art. Based on that evidence, the court concluded that the term "surrender value protected investment credits" would not have been understandable to a person of skill in the field of insurance administration.

We believe that the intrinsic evidence summarized above points to the correct construction of the claim language in dispute and that even if the district court's analysis of the extrinsic evidence were correct, the court's summary judgment of indefiniteness would have to be overturned. In any event, however, we conclude that the district court's analysis of the extrinsic evidence was flawed. In particular, the court disregarded several important portions of the extrinsic evidence that supported Bancorp's assertion that the term "surrender value protected investment credits" would be understood by a person of skill in the pertinent art.

Bancorp's principal expert witness was Larry Mylnechuk. In a declaration supplementing his deposition testimony, Mr.

Mylnechuk stated that he understood the term "surrender value protected investment credit" to mean "the increase in the value—i.e., 'the credit'—of the stable value protected investment necessary to achieve the targeted return for the fund," and that he would have understood that to be the meaning of the term "surrender value protected investment credit" in September 1996, when the parent application of the '792 patent was filed. He added that it "would be clear to one of ordinary skill in the art what the term 'surrender value protected investment credit' would mean."

The district court declined to consider Mr. Mylnechuk's testimony on the ground that Mr. Mylnechuk was an expert in stable value investments but not in life insurance administration, which the court concluded was the relevant field of art for the '792 patent. The court based that conclusion on the description of the subject matter in the abstract of the patent: "Method and system to track, reconcile and administer the values of life insurance policies in separate accounts, including Stable Value Protected Investment Funds." While it is true that the patent pertains to life insurance administration, the title of the patent itself ("System for Managing a Stable Value Protected Investment Plan") makes clear that the patent also relates to the field of stable value protected investments.

■ In determining the relevant art for purposes of addressing issues of patent validity, the court must look to the nature of the problem confronting the inventor. *Orthopedic Equip. Co. v. United States,* 702 F.2d 1005, 1009 (Fed.Cir.1983) (addressing obviousness). The problem facing the inventors in this case was to devise a system of administering variable life insurance policies that included stable value protected investments. Therefore, the relevant art in this case plainly includes the use of stable value protected investments in the context of variable life insurance

policies. An expert in stable value protected investments, such as Mr. Mylnechuk, would be qualified to testify as to the terms of art used in connection with stable value protected investments, whether incorporated in variable life insurance policies or in other financial instruments. It was therefore error for the court to decline to consider Mr. Mylnechuk's evidence regarding the meaning of a term used in connection with stable value protected investments.

■ In addition to Mr. Mylnechuk's evidence, Bancorp submitted evidence that before the priority date of the '792 patent, several of the defendants' employees and persons working with them referred to stable value protected products as "surrender value protected" investments or "SVP." In addition, Bancorp offered a declaration by a prospective BOLI product customer that as of November 1995 the customer understood "surrender value protection" to refer to "a mechanism to smooth short-term fluctuations in the cash value of separate account life insurance by reporting a value for accounting treatment to the policyholder that may differ from the market value of the securities in the separate account." The district court refused to consider that evidence on the ground that it did not show public use of the term "surrender value protection." Although none of that evidence was in the form of publicly available materials that reflected a widespread understanding of the meaning of that term in the industry, the evidence is nonetheless probative as indicating that persons familiar with the stable value protected investments being marketed by Hartford and its associates used and understood the term "surrender value protected investment" in accordance with Bancorp's proposed interpretation. The district court's refusal to consider that evidence for any purpose was error.

While the district judge correctly noted that the proper test is not what the parties know but what one of ordinary skill in the art would know, the evidence of defendants' knowledge and use of the term prior to patenting is relevant to show that the term was in use and had a discernible meaning to at least some persons practicing in the field.

For the reasons stated, we reverse the judgment of invalidity for indefiniteness and remand this case to the district court for further proceedings on other issues of patent validity and infringement that may be presented by the parties.

*REVERSED and REMANDED.*